IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

EVELYN A. TORRADO                                                    PLAINTIFF

VS.                                        4:05CV01848-WRW

KIMBERLY-CLARK CORPORATION
PENSION PLAN                                                 DEFENDANT

## ORDER

Pending are Plaintiff's and Defendant's Motions for Judgment on the Record.[1] Defendant responded to Plaintiff's motion,[2] but Plaintiff did not respond to Defendant's motion.

This is an ERISA claim for benefits under 29 U.S.C. § 1132 (a)(1)(b). Plaintiff is seeking long-term disability benefits under a pension plan sponsored by her former employer, Kimberly-Clark Corporation ("Kimberly-Clark"), and implemented by the Kimberly-Clark Trust Committee ("Trust Committee").

Plaintiff applied for permanent and total disability benefits in April 2004[3] and her application was denied May 6, 2004.[4] Plaintiff appealed, was denied a second time, and asked for an opportunity to submit more information.[5] The Trust Committee preformed a third review

---

[1]Doc. Nos. 13, 19.

[2]Doc. No. 22.

[3]Doc. No. 21, Administrative Record pp. 0001-02.

[4]*Id*. at 0003-06.

[5]*Id.* at 0191-192.

1

of Plaintiff's medical information and denied her request again.⁶ Plaintiff filed complaint in December 2005.⁷

**I. Background**

Plaintiff worked for Kimberly-Clark as a technician. She was hired in September 1981, and was 40 years old when she was placed on short-term disability on October 7, 2003.⁸ Throughout her career with Kimberly-Clark, Plaintiff performed a medium level job, i.e., she was required to occasionally lift up to 45 pounds; to push, climb, pull, reach above her head, bend, stoop, and stand during a 12-hour shift.⁹

Plaintiff was treated for her physical problems by three different physicians: Dr. Lander Smith, Dr. Robert McCarron, and Dr. Bruce Safman. Dr. Smith is Plaintiff's family doctor and Drs. McCarron and Safman are orthopedic specialists. From September 2002 through March 2004 the treatment she received from these physicians overlapped. In spite of the overlap, the doctors' treatment will be discussed individually.

Plaintiff's disabling physical problems started after a car accident in July 2002. A week after the accident, she saw Dr. Smith complaining of back and neck pain. She continued seeing Dr. Smith until September 2002.¹⁰

---

⁶*Id.* at 0208-210.

⁷Doc. No. 1.

⁸Doc. No. 21, Administrative Record pp. 0009-10.

⁹*Id.* at 0010.

¹⁰*Id.*

Plaintiff returned to Dr. Smith in January 2003 with complaints about pain in both feet, and saw him again in September 2003, after being involved in a second car accident. She reported increased back pain since the second accident.[11] She was last seen by Dr. Smith in March 2004. During the course of his treatment, Dr. Smith referred Plaintiff first to Dr. McCarron and then to Dr. Safman.

Dr. McCarron first treated Plaintiff on September 25, 2002. He ordered diagnostic studies which showed a bulging disc at the L4-L5 level.[12] In March and April 2003, Plaintiff began reporting pain and numbness in her feet and hands.[13] Additional tests revealed bilateral carpal tunnel syndrome and tarsal tunnel.[14] Dr. McCarron performed surgery on both tarsal tunnels in May 2003, and on the left carpal tunnel in July 2003.[15] Her symptoms improved for a short time, but, by the beginning of 2004, chronic pain returned to her hands and feet. On February 2, 2004, Dr. McCarron completed a disability report that limited Plaintiff to light work, and stated that her physical restrictions were permanent.[16]

The limitations assigned by Dr. McCarron matched the results of Plaintiff's Functional Capacity Evaluation. This evaluation confirmed that Plaintiff gave a consistent and reliable effort during the evaluation. After the tests, she was assigned the following physical limitations:

---

[11]*Id.* at 0053.

[12]*Id.* at 0074-77.

[13]*Id.* at 0071-72.

[14]*Id.* at 0230 (defining tarsal tunnel as an entrapment pressure on the tibial nerve as it courses through the inside aspect of the foot and ankle).

[15]*Id.* at 0064-72.

[16]*Id.* at 0027-30.

no lifting over 25 pounds; no continuous standing for more than 45 minutes, and no standing over 4 hours in an 8 hour workday.[17] On March 19, 2004, Dr. McCarron released Plaintiff to the Dr. Safman's care.[18]

Plaintiff started seeing Dr. Safman in January 2003 for foot pain and numbness.[19] While she reported improvement of her neck and back pain, the symptoms in her feet had increased, with significant numbness and burning on her foot's surface.[20] She also told Dr. Safman that she was experiencing the same symptoms in her hands.[21] By March 2004, Dr. Safman diagnosed Plaintiff with fibromyalgia.[22] Fibromyalgia is a widespread musculoskeletal pain and fatigue disorder for which the cause is still unknown.[23]

Plaintiff filed for long-term disability for the first time in May 2004. The Trust Committee denied the application because she did not submit enough medical evidence that she was permanently and totally disabled. The Trust Committee listed the following deficiencies: (1) no objective medical information indicating that she had a permanent disability; (2) no

---

[17]*Id.* at 0017-26.

[18]*Id.* at 0055.

[19]*Id.* at 0082.

[20]*Id.* at 0085.

[21]*Id.* at 0087-89.

[22]*Id.* at 0056.

[23]*Id.* at 0239.

examination for tender points to support a fibromyalgia diagnosis; and (3) no other objective medical tests ruling out other possible causes of her symptoms.[24]

During the review process, Plaintiff submitted additional disability documentation from Dr. Safman, which was reviewed by the Trust Committee. Dr. Safman's reports provided the following information: (1) there are no objective tests to establish fibromyalgia; (2) fibromyalgia is a clinical diagnosis; (3) Plaintiff demonstrated 18 out of 18 "trigger points" for fibromyalgia;[25] (4) blood tests were performed to rule out other causes of her symptoms; (5) her condition would likely be lifelong; (6) physical activity and emotional stress exacerbate her condition (7) she shows objective pathology for fibromyalgia.[26]

The Trust Committee submitted the additional reports to its own reviewing physician, Dr. Farris, who stated that "[t]he issue in this case is not whether this patient has fibromyalgia, but whether she has objective evidence of impairment."[27] Dr. Farris recommended denial because: (1) fibromyalgia is "controversial"; (2) there is no known cause of fibromyalgia and no true objective tests to "prove" the diagnosis; (3) fibromyalgia is not crippling, deforming, or degenerative; (4) fibromyalgia is not a sufficient cause of impairment.

Plaintiff's appeals were denied because she did not meet the Plan's definition of permanent and total disability, which states:

---

[24]*Id.* at 0004.

[25]*Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (explaining that a patient is diagnosed with fibromyalgia based on a doctor's palpations of eighteen fixed points on the body that when pressed firmly cause the patient to flinch).

[26]Doc. No. 21, Administrative Record pp. 0224-25, 0229.

[27]*Id.* at 0247-49.

5

> Totally and Permanently Disabled: A condition arising out of injury or disease which the Committee determines is permanent and prevents an Employee from engaging in any occupation with his Employer commensurate with his education, training and experience. . . .[28]

## II. Standard of Review

ERISA contains no standard of review, but the reviewing court should apply a *de novo* standard of review unless the plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[29] Where a plan gives the administrator discretionary power, the administrator's decision is reviewed only for an abuse of discretion.[30]

The discretionary standard requires the plan administrator to base its decisions on reasonable interpretations of the terms of the plan and on substantial evidence. This means that the decision must be supported by enough evidence (more than a scintilla but less than a preponderance) to convince a reasonable person that it is proper.[31]

A court still may apply a less deferential standard where the plan beneficiary presents "material probative evidence" demonstrating that (1) a palpable conflict of interest or serious procedural irregularity existed, which (2) caused a serious breach of an administrator's fiduciary duty toward a plan beneficiary.[32] A conflict of interest or a procedural defect must have some

---

[28]*Id.* at 0007.

[29]*Firestone and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[30]*Firestone*, 489 U.S. at 111; *King v. Hartford Life and Accidental Insurance Co.*, 414 F.3d 994 (8th Cir. 2005).

[31]*Donaho v. FMC Corp.*, 74 F.3d 894, 900 (8th Cir. 1996).

[32]*Delta Family-Care Disability and Survivorship Plan v. Marshall*, 258 F.3d 834, 840 (8th Cir. 2001).

connection to the decision reached.[33] In other words, a conflict or a defect, standing alone, will not lessen the review standard.

Plaintiff must offer evidence that "gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the fiduciary's whim."[34] Evidence that the plan administrator did not perform a "meaningful" review can support a less deferential review, and evidence of procedural irregularities will also lessen the review standard.[35] An alleged procedural irregularity must be so extreme that it might create a "total lack of faith in the integrity of the decision making process."[36] A beneficiary claiming procedural irregularities must show that the plan administrator acted either dishonestly or from an improper motive, or failed to use proper judgment.[37] If Plaintiff shows a procedural irregularity, a less deferential review of the administrator's decision will be applied.

Under this less deferential review, the administrator's burden of proof increases as the degree of procedural irregularity increases.[38] Extreme conduct can result in a complete loss of deference, or a requirement that the record contain a level of evidence that is closer to a preponderance of evidence to uphold the administrator's decision.[39]

---

[33]*Schatz v. Mutual of Omaha Inc. Co.*, 220 F.3d 944, 948 (8th Cir. 2000).

[34]*Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998).

[35]*Janssen v. Minneapolis Auto Dealers Benefit Fund*, 447 F.3d 1109 (8th Cir. 2006).

[36]*Layes v. Mead Corp.*, 132 F.3d 1246, 1251 (8th Cir. 1998).

[37]*Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir.1996) (citing Restatement (Second) of Trusts § 187 (1959)).

[38]*Woo v. Deluxe Corp.*, 144 F.3d 1157, 1161 (8th Cir. 1998).

[39]*Id.*

**III. Discussion**

The Trust Committee has discretion to determine if Plaintiff fits the Plan's definition of permanent and total disability. It also has a fiduciary obligation to Plaintiff, and must reasonably exercise discretion by making a full and meaningful review of her claim. However, the evidence suggests that the Trust Committee's decision was arbitrary and not the result of a reasonable evaluation.

Under the plan's definition of permanent and total disability, Plaintiff must meet a two-part test: (1) she must show that she has a permanent condition, and (2) that her permanent condition prevents her from performing any other job with Kimberly-Clark. The Trust Committee relied on this definition to support its denial of Plaintiff's claim.

However, the evidence shows that the Trust Committee committed serious procedural errors to reach its conclusion: (1) it ignored Dr. Safman's conclusions that Plaintiff suffered from a permanent, debilitating disease supported by appropriate clinical and pathology findings; (2) it ignored Dr. McCarron's conclusions that Plaintiff's limitations were permanent; (3) it failed to order an independent medical examination to evaluate Plaintiff's fibromyalgia;[40] (4) it ignored the functional capacity evaluation that confirmed Plaintiff's valid limitations; and (5) it failed to order a vocational evaluation, or to demonstrate that Kimberly-Clark has a light duty job.

The medical evidence shows that Plaintiff has fibromyalgia, a bulging lumbar disc, and mild nerve damage in her hands and feet. Before submitting her first claim for disability benefits, Plaintiff participated in a functional evaluation which showed light work restrictions,

---

[40]*Id.* at 1161 (finding that an administrator failed to use proper judgment by not having an expert review of claim with medical evidence of an uncommon disease).

that greatly impaired her ability to lift, stand, reach, balance, stoop, or kneel.[41] The evaluation also showed that Plaintiff "put forth very consistent effort and passed all criteria for a valid and reliable functional capacity evaluation."[42] These limitations prevented Plaintiff from returning to the job she held with Kimberly-Clark for over twenty years.

After reviewing the initial claim, the Trust Committee asked for additional supporting evidence. Plaintiff complied with this request and presented Dr. Safman's most current records. Dr. Safman is qualified to treat and evaluate Plaintiff -- he is certified by the American Board of Physical Medicine and Rehabilitation, he served as a director of a number of rehabilitation hospitals, and practices in the offices of Arkansas Specialty Orthopedics.[43]

Dr. Safman documented Plaintiff's chronic pain and fatigue symptoms for over a year. During the course of his treatment, he ordered blood tests to rule out other causes for her symptoms;[44] and while he conceded that there are "no positive objective studies for fibromyalgia," he documented 18 out of 18 positive trigger points, which is the most objective way that fibromyalgia can be diagnosed; and he stated that Plaintiff had all the clinical findings for fibromyalgia[45] Dr. Safman also explained that Plaintiff did have objective pathology test results for fibromyalgia -- "including low serum and spinal fluid serotonin levels, increased

---

[41]Doc. No. 21, Administrative Record pp. 0017-26.

[42]*Id.* at 0017.

[43]*Id.* at 0243.

[44]*Id.* at 0225.

[45]*Id.* at 0229.

9

substance P and spinal fluid; abnormal functional MRI and abnormal cerebral blood flow. . . ."[46] Finally, Dr. Safman stated that her condition would be "lifelong." [47]

This is strong medical evidence addressing all the Trust Committee's initial concerns: Dr. Safaman stated that she had a permanent condition supported by objective tests and clinical findings; he explained that other tests were performed that ruled out different causes; and he confirmed that her condition was permanent.

In response to this evidence, the Trust Committee did not send Plaintiff to a specialist for a second evaluation, but relied on the opinion of Dr. Farris. Dr. Farris never saw Plaintiff, and his credentials are not part of the record. His recommendations do not address Dr. Safman's conclusions. Instead, Dr. Farris declares that fibromyalgia is a controversial disease that is difficult to confirm.[48] If this is true, then the Trust Committee should have exercised proper judgment[49] and ordered an Independent Medical Evaluation by a rheumatologist to either confirm or discredit the diagnosis.

Moreover, an independent evaluation could have properly addressed the extent and degree of Plaintiff's impairment. Dr. Farris dismissed Plaintiff's claim of permanency, and makes a conclusory statement that treatment *may* be effective for *some* patients afflicted with

---

[46]*Id.* at 0224.

[47]*Id.* at 0229.

[48]*Id.* at 0248.

[49]*Woo*, 144 F.3d at 1161.

10

fibromyalgia.[50] This is a general observation about fibromyalgia that disregards Plaintiff's medical records which describe the persistence of her symptoms despite extensive treatment.

The only strong opinion offered by Dr. Farris is that fibromyalgia is not crippling, deforming, or degenerative.[51] However, there is nothing in the Plan that requires proof of crippling, deforming or degenerative conditions. Under the Plan, the condition or disease must be permanent, not devastating. So, this opinion is irrelevant.

Even though ERISA administrators are not required to give special weight to the opinions of treating doctors,[52] Dr. Safman's opinions were not appropriately reviewed or challenged by a physician of equal expertise and experience. In addition, there was no competent review of the clinical and diagnostic basis for Dr. Safman's conclusions.

Although there is no specific Plan provision requiring "objective evidence," an administrator may deny benefits on this basis without such a provision.[53] However, in the face of a disease like fibromyalgia -- whose symptoms are entirely subjective -- an inflexible demand for objective evidence of a disabling abnormality is arbitrary.[54] Moreover, the Trust Committee ignored evidence that gave Plaintiff's subjective complaints validity: (1) she gave a reliable effort during her functional capacity evaluation, and if she were inclined toward exaggerating pain, she would have done so in this instance; (2) the functional evaluation recommended

---

[50]Doc. No. 21, Administrative Record p. 0248 (emphasis added).

[51]*Id.*

[52]*Alexander v. Trane Co.*, 453 F.3d 1027, 1031 (8th Cir. 2006) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003)).

[53]*Hunt v. Metro. Life Ins. Co.*, 425 F.3d 489, 491 (8th Cir. 2005).

[54]*Payzant v. UNUM*, 402 F. Supp. 2d 1053, 1064 (D. Minn. 2005).

11

limitations that are consistent with Plaintiff's diagnosis; (3) she demonstrated all 18 of the trigger points for fibromyalgia, and, although this test relies on her subjective response, it is unlikely that she knew which trigger points were significant; and (4) pathology tests showed a chemical imbalance associated with fibromyalgia.

The valid functional capacity evaluation established Plaintiff's physical limitations. The Trust Committee never considered her inability to perform tasks associated with the job she held for twenty years. No vocational assessment was done, and the Trust Committee did not identify any job positions at Kimberly-Clark that matched Plaintiff's capabilities. There is no evidence that Kimberly-Clark has a job for a high school graduate that does not require continuous standing, walking, or lifting over 25 pounds. In short, the second part of the Plan's definition of permanent disability was overlooked.

In order to gain a less deferential review, Plaintiff must prove that the procedural irregularities caused a breach of fiduciary duty, and is related to the decision to deny her claim.[55] As discussed above, the decision reached by the Trust Committee was based on an inappropriate review of the medical evidence and a failure to order an independent medical exam and a vocational assessment. Therefore, a less deferential review should be applied.

The Trust Committee's failure to use proper judgment or to perform a meaningful assessment, raises the standard of review to "substantial evidence bordering on a preponderance."[56]

---

[55] *Woo*, 144 F.3d at 1160-61.

[56] *Id.*

There is very little evidence offsetting Plaintiff's evidence that she has a life-long disease that prevents her from returning to her former job, or to hold any other job with Kimberly-Clark. The Trust Committee relied solely on a lack of objective evidence to make a decision about a largely subjective illness. Its denial of Plaintiff's claim for long-term disability is not supported by substantial evidence, and falls far short of a level of evidence that approximates a preponderance.

**IV. Conclusion**

Based on the above, the Plaintiff's Motion for Summary Judgment is GRANTED; Defendant's Motion for Summary Judgment is DENIED; Defendants must pay all back-benefits due and owing along with prejudgment interest, and reasonable attorney fees.

IT IS SO ORDERED dated this 29th day of March 2007.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE